IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRUDY BANKS O/B/O MCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 22-0380-MU |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trudy Banks brings this action on behalf of her minor child M.C.K., pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Supplemental Security Income ("SSI") for M.C.K. (Doc. 1). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 10 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 11. Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments made at oral argument, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 10 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for SSI, on behalf of her minor child, M.C.K., under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, on December 8, 2020. (Doc. 14; PageID. 139). Her application was denied at the initial level of administrative review on March 23, 2021. (Doc. 14; PageID. 164-67). Plaintiff filed a Request for Reconsideration on March 30, 2021. That request was denied on May 27, 2021. (Doc. 14; PageID. 173-75; 177-78). Plaintiff timely filed a Request for Hearing by an Administrative Law Judge (ALJ). After a hearing was held on December 2, 2021, the ALJ issued an unfavorable decision finding that M.C.K. was not under a disability from the alleged onset date, September 17, 2018, through the date of the decision, December 15, 2021. (Doc. 14; PageID. 61-75; 76-92). Plaintiff appealed the ALJ's decision to the Appeals Council, and, on August 1, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Doc. 14; PageID. 52-57).

After exhausting administrative remedies, Plaintiff sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on December 28, 2022. (Docs. 13, 14). Both parties filed briefs setting forth their respective positions. (Docs. 15, 17). The Court conducted oral argument on May 4, 2023. (Doc. 21).

## II.  CLAIM ON APPEAL

Plaintiff alleges that the ALJ erred in his evaluation of M.C.K.'s school achievement when determining that he has a less than marked impairment in acquiring and using information and further erred by failing to discuss any of M.C.K.'s mental

health treatment records when discussing whether he has marked limitation in the domain of interacting and relating with others. (Doc. 15 at 2).

## III. BACKGROUND FACTS

M.C.K., who was born on April 24, 2008, was 13 on the date of the ALJ's decision. (Doc. 14; PageID. 232). Plaintiff alleged M.C.K. was disabled due to attention deficit hyperactivity disorder, developmental delay, anxiety, and premature birth due to his mother being on drugs. (Doc. 14; PageID. 250-51).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ decided that M.C.K. had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Doc. 14; PageID. 65-71). The ALJ found that M.C.K. had not engaged in substantial gainful activity since the date of the application; that M.C.K. had severe impairments of attention-deficit hyperactivity disorder, a learning disorder, an impulse disorder, disruptive mood dysregulation, and oppositional defiant disorder; and that M.C.K. did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P. Appendix 1 (the listings) or that functionally equaled the listings. (Doc. 14; PageID. 65-71).

## V. DISCUSSION

When a claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Bryant v. Social Sec. Admin*., 478 F. App'x 644, 645 (11th Cir. 2012) (stating that "[w]here substantial evidence supporting the ALJ's fact findings exists, we cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings").

Pursuant to 42 U.S.C. § 1382c(a)(3)(C)(i), an individual under the age of eighteen is considered disabled if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." The regulations establish a three-step sequential evaluation process for determining childhood disability, in which a child must show: (1) he is not working; (2) he has a severe impairment or combination of impairments; and (3) his impairment or combination of impairments meets, medically equals, or functionally equals the Listings.  *See* 20 C.F.R. § 416.924 (2019). The ALJ found, and the parties do not dispute, that M.C.K. satisfied the first two requirements.

(Doc. 14; PageID. 65-71). The ALJ also found, and the parties do not dispute, that M.C.K.'s impairment or combination of impairments does not meet or medically equal the severity of an impairment in the Listing of Impairments. 20 C.F.R. 404, Subpt. P, App. 1. The dispute, here, is limited to the third step of the ALJ's analysis, whether M.C.K.'s impairment or combination of impairments "functionally equals the severity" of a listed impairment.

A child's functioning is evaluated in the following six domains, which are "broad areas of functioning intended to capture all of what a child can and cannot do:" (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  See 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment functionally equals the Listings if it results in "marked" limitations in two domains or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain when his impairments interfere "seriously" with his ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation in a domain when his impairments interfere "very seriously" with his ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(e)(3)(i).

In deciding whether a child has a "marked" or "extreme" limitation in a domain, an ALJ should consider all the relevant information in the case record that helps determine his functioning. See 20 C.F.R. § 416.926a(e)(1)(i). "No single piece of evidence taken in isolation can establish whether [a child] ha[s] a 'marked' or an

5

'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i). In assessing a child's functional limitations, the ALJ should consider how well the child can initiate and sustain activities, how much extra help the child needs, the effects of structured or supportive settings, how the child functions in school, and the effects of the child's medication or other treatment. *See* 20 C.F.R. § 416.926a(a).

Plaintiff argues that the ALJ erred when he found that M.C.K. had less than a marked limitation in the domains of "acquiring and using information" and "interacting and relating with others". The Court finds no error in the ALJ's decision.

**1. Acquiring and Using Information.**

Plaintiff argues that in finding M.C.K. had less than a marked limitation in acquiring and using information, the ALJ relied on M.C.K.'s Annual Progress Goals, established related to his Individualized Education Plan (IEP), his grades, and a notation from Nurse Practitioner Janelle Davis. She argues reliance on M.C.K.'s scholastic achievement is erroneous because any progress indicated must be viewed considering the support provided by his IEP and, further, that reliance on Nurse Practitioner Janelle Davis' notation is misplaced. Plaintiff contends instead that evidence supports: M.C.K. has a full-scale IQ of 67; his 2020-2021 IEP, as a sixth (rising seventh) grader, reflects that he reads at a first-grade level and performs math calculations at a second-grade level; until the 2020-2021 school year, he was taught in a self-contained classroom; his current IEP goals included small group instruction with focus on 3-5 grade-level sight words; and his assessments are accommodated. (*See* Doc. 14; PageID. 707, 710-14).

In assessing this domain, the ALJ must consider how well a child acquires or

6

learns information and how well he uses the information learned. 20 C.F.R. § 416.926a(g). The ALJ should evaluate how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments." Soc. Sec. Ruling, SSR 09–3p., Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Acquiring & Using Information" (S.S.A. Feb. 17, 2009). The regulations provide examples of skills that children should possess within certain age groups to aid in evaluating this domain. M.C.K., as an "adolescent", should continue to demonstrate and use what he has learned in academic assignments in daily living situations without assistance, "e.g., going to the store, using the library, and using public transportation." 20 C.F.R. § 416.926a(g)(2)(v). Adolescents "should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar)" and "should also learn to apply these skills in practical ways that will help [them] enter the workplace after [they] finish school." *Id*. In finding that M.C.K. had a "less than marked" limitation in this domain, the ALJ concluded:

> More than a year and a half before the protective filing date, the claimant was diagnosed with an academic or educational problem, an attention-deficit hyperactivity disorder, and a disruptive mood dysregulation disorder by Sarah Siddiqui, D.O.. (Exhibit C7F). Less than 4 days before the protective filing date, the claimant's individualized education program was modified to reintroduce the claimant to the general education curriculum. (Exhibit C5F). It was noted at that time that the claimant did not "have behavior which impedes . . . learning. . . ." The individualized education program also noted that the claimant routinely walked to school. Deficits in reading and mathematical competences were noted at that time, with the claimant's first-grade level reading and second-grade level mathematical abilities, despite the claimant's being in 7th grade. The claimant was afforded several accommodations for academic performance, including repeated delivery of instructions and additional time for the completion of assignments. However, at an examination in 01/2021, roughly a month later, the claimant was noted to exhibit a 7th-grade reading level, according

7

> to Janelle Davis, NP. (Exhibit C6F). The examination results reported by the impartial Janelle Davis are not supportive of a finding of a marked limitation in acquiring and using information.
>
> Notes (by Leigh Macon, who is not established by the record as an acceptable medical source) of the claimant's treatment history in 07/2021 indicated that the claimant's parent reported improvements in the claimant's behavior and peer-interactions in 2020, but the claimant was still noted in 2021 to have a history (perhaps a remote history) "of throwing temper tantrums when he gets angry/frustrated, has difficulty [with] focus/paying attention, easily distracted, and fidgety." A different therapist who is also not shown to be an acceptable medical source noted in 08/2021 that the claimant denied depression but prefers solitude and does not want to "bother with people." (Exhibit C9F). The updated individualized education program received by the Social Security Administration in 10/2021 showed that the claimant had made progress (specifically, "some progress[,]" as opposed to "very little progress") and was anticipating mastery in mathematical and reading capabilities, indicating that the claimant was probably much closer to reading and calculating at the proper grade level for the claimant's age than to reading and calculating at a level several years behind the claimant's age-appropriate grade. (Exhibit C11F). This evidence of improvement approaching mastery of math and reading less than a year after the application filing date is inconsistent with finding that the claimant had a marked limitation in acquiring and using information.
>
> One of the claimant's teachers had some things to say about the claimant's performance and problems as well. Mikkel Davis (not to be confused with Janelle Davis, NP), the claimant's special education inclusion instructor, noted that the claimant has obvious problems with acquiring and using information, but none of those problems were "serious[.]" (Exhibit C7E). . . . Davis also remarked that, when the claimant is medicated, the claimant "is able to focus on task and is more calm and relaxed." Davis's report was dated May 6, 2021. That report is consistent with the claimant's Spring 2021 grades, which were, except for an A in science, all C-grades, except for 2 D-grades. (Exhibit C8E). The claimant's Fall 2021 grades also showed 3 D-grades, 2 B-grades, and 1 A-grade. (Exhibit C15E). This evidence of the claimant's grades being above average in many subjects and of the claimant's teacher indicating the lack of serious problems in acquiring and using information is not consistent with a finding of a marked limitation in that domain.

(Doc. 14; PageID. 68-69). The ALJ also considered the medical opinions of Drs. Joanna Koulianos, Ph.D., Virginia Lee Bara, Ph.D., Charles Hunter, M.D., and Robert Heilpern, M.D., the Disability Determination Services' physician consultants. (Doc. 14; PageID.

70). Each medical opinion, after reviewing school, medical, and mental health records, and summarizing the same, concluded that M.C.K. had a less than marked limitation in acquiring and using information. (Doc. 14; PageID. 140-46, 147-55).

Upon review of the record, and as challenged by Plaintiff, the ALJ's reference and reliance on Nurse Practitioner Janelle Davis' notation, that M.C.K. exhibited reading at a 7th grade level, appears to be in error. As part of an examination at the Mobile County Health Department, Nurse Practitioner Davis administered the REALM-Short Form to gauge the reading level of the person completing the medical form. In this case, that was M.C.K.'s mother, not M.C.K. The document states, "Reading level: 7/7", and under the instructions for administering the REALM-short form, it further states, "pass 7/7 mother". (Doc. 14; PageID. 722). However, this mistake is harmless given the substantial evidence that supports the ALJ's findings, as discussed below. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) ("Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination.").

Having reviewed the ALJ's decision, as well as all record evidence, the Court notes that, in assessing functional equivalence, the ALJ discussed and considered all relevant evidence of M.C.K.'s activities and limitations from appropriate sources, *see* 20 C.F.R. § 416.924a(a), such as medical records and opinions, hearing testimony, Function Reports, and school records. (Doc. 14; PageID. 66-71). The ALJ's decision and the briefs of the parties contain detailed and complete recitations of the evidence, which the Court incorporates herein by reference. This evidence, as discussed by the ALJ, constitutes substantial evidence supporting the ALJ's finding that M.C.K. had less than

marked limitation in the domain of acquiring and using information. (Doc. 14; PageID. 67-69). To be sure, the ALJ considered evidence that M.C.K. required intervention and support, including special education services and accommodations (specifically listing two of them), in transitioning from self-contained classes to general education classes. While Plaintiff argues that M.C.K. is not being taught at grade level, even while in general education classes, his IEP indicates otherwise, detailing that M.C.K. "is no longer on the Alabama Alternate Standards and takes and receives all services for state and mandated assessments in the general education curriculum and accommodations" and that he does not need program modifications to the general education curriculum. (Doc. 14; PageID. 707, 712). In these general education classes, he has maintained grades that do not represent a marked limitation in acquiring and using information. For instance, M.C.K. received an 80, B-grade, in 7th grade Reading Intervention; 80, B-grade, in 7th grade life science; 62, D-grade, in 7th grade math; 64, D-grade, in 7th grade civics; 65, D-grade, in 7th grade English Language Arts; and 100, A-grade, in 7th grade physical education. (Doc. 14; PageID. 371). While these grades were met with an IEP in place, the special education services provided fall short of supporting a marked limitation, *but cf.*, *Gonzalez ex rel. C.C. v. Astrue,* 2009 WL 4724716, at *6 (N.D.N.Y. Dec. 2, 2009) (A finding of "less than marked" is unsupported by substantial evidence when the ALJ fails to consider that the child's improvements in behavior occurred only in the structured special education setting), as M.C.K. spent 80%-100% of his day inside the regular education environment, receiving special education services in the resource room for approximately 90 minutes per week to address reading and math deficits. (Doc. 14; PageID. 712, 714). Moreover, and importantly, his special education teacher opined

that M.C.K. did not have any "serious" or "very serious" problem acquiring or using information, including comprehending oral instructions; understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; applying problem-solving skills in class discussions. (Doc. 14; PageID. 277). Notably, the teacher's evaluation was completed by considering how M.C.K. functioned without accommodations and assistance – that is, in comparison to a child his age without impairments. (*See* Doc. 14; PageID. 276, 277). Indeed, the front page of the Teacher Questionnaire states:

**IMPORTANT**

**Please compare this child's functioning to that of same-aged children who do not have impairments.**

**If the child is receiving special education services, please be sure to compare his or her functioning to that of same-aged, unimpaired children who are in regular education.**

(Doc. 14; PageID. 276). And, the rating key provided in the Acquiring and Using Information section of the questionnaire again instructs that the child's functioning be rated in comparison to same-aged children without impairment. (Doc. 14; PageID. 277). Despite M.C.K.'s full-scale IQ score of 67 noted by Plaintiff from 2017, the record also contains evidence the M.C.K. received a full-scale IQ score of 80 when tested in 2018 (Doc. 14; PageID. 151, 406), and AltaPointe Health Services, Inc. records from 2018-2020 repeatedly chart M.C.K. as having "normal intelligence". (Doc. 14; PageID. 467, 481, 495, 524, 530, 533). This too supports the ALJ's finding of a less than marked

impairment in this domain.

Thus, the record establishes that the ALJ considered M.C.K.'s ability to function and "independently initiate, sustain, or complete activities" "compared to other children [his] age who do not have impairments", 20 C.F.R. § 416.926a(b)(5), and specifically did so with substantial evidence beyond the IEP Annual Progress Goal and against children without impairments. Further, "there is relevant evidence that a reasonable person would accept as adequate to support the conclusion that [M.C.K.'s] limitation is less than marked." *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (internal quotations, citation, and alterations omitted).

### 2. Interacting and Relating to Others.

Plaintiff asserts that the ALJ erred in failing to discuss or summarize any of M.C.K.'s mental health treatment records from AltaPointe Health Services, Inc. (AltaPointe) when discussing whether he has a marked limitation in the area of interacting and relating to others.

The domain of interacting and relating to others considers how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For M.C.K.'s age, the regulations provide:

> By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information,

12

>describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

20 C.F.R. § 416.926a(i)(2)(v). Examples of limited functioning in this domain include: (i) do not reach out to be picked up and held by caregiver; (ii) no close friends, or friends are all older or younger than the child; (iii) avoid or withdraw from people you know, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance; (vi) has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3)(i)-(vi).

The ALJ found that M.C.K. has a less than marked limitation in this area. The ALJ noted that M.C.K.'s IEP indicated that he did not "have behavior which impedes . . . learning . . ." (Doc. 14; PageID. 68) (alteration in original). The ALJ relied on the medical opinions of non-treating physicians, Drs. Koulianos, Bare, Hunter, and Heilpern, and the nonmedical, but persuasive, opinion of Mikkel Davis, who indicated that M.C.K. had no problems in the domain of interacting and relating with others. (Doc. 14; PageID. 69-70).

In reaching his decision, contrary to Plaintiff's indication, the ALJ cited to the notes of Leigh Macon, the admitting practitioner at AltaPointe, and Larriel Mosley, M.C.K.'s therapist at AltaPointe, and the AltaPointe records dated 8/17/2021 to 9/21/2021. (Doc. 14; PageID. 68, 737-771, 772-79). In particular, the ALJ discussed evidence from multiple mental health records, therapy dates, including M.C.K.'s Annual Updates from 2020 and 2021 and therapy notes from August 17, 2021. (Doc. 14, PageID. 743, 778). Moreover, the credited opinions of the agency medical consultants

contain thorough summaries of M.C.K.'s medical records including those from AltaPointe. (*See* Doc. 14; PageID. 140-46; 147-55).

Review of the mental health records from Alta Pointe show that while M.C.K. has a lack of social skills with others, including trouble maintaining eye contact, making the facial expressions of someone who is sad or angry, identifying different emotions within himself and others, understanding social cues, that he reported wanting to be left alone in a dark room with a TV, that he often talks to himself and wants to be alone, and that when he got angry with his niece he pulled her chair out from underneath her. (Doc. 14; PageID. 736-79). These records also indicate, however, that M.C.K. reported on 12/31/20, having friends at school (Doc. 14; PageID. 736); on 1/27/21, that he did not talk to his mother because he "has nothing to talk about" (Doc. 14; PageID. 733); on 5/12/21, that he has been spending time with his sister and that he has been having more conversations with his family (Doc. 14; PageID. 761); on 8/17/21, having friends in his old neighborhood but that after moving, everything changed (Doc. 14; PageID. 778). In April 2021, the AltaPointe records indicate that M.C.K. "is doing adequately in relationships with family members although some problems may exist," has "mild problems with functioning in current living situation," has "moderate problems with his/her social relationships," "is doing adequately with recreational activities although some problems may exist," "receptive and expressive communication appears developmentally appropriate" with "no reason to believe that the child has any problems communicating," "has severe problems with emotion control affect regulation but is able to control affect at times," has "moderate anger control problems," "has no problems with affect regulation," and has "no evidence of problematic social behavior." (Doc. 14;

PageID. 767-70). On 5/12/21, his therapist noted that M.C.K. was very open with having conversation and asking questions and "has made some progress[] by utilizing his social skill during session." (Doc. 14; PageID. 761). On 8/17/21, the therapy notes indicate that M.C.K. has "made some progress by expressing his emotions during session and managing his anger." (Doc. 14; PageID. 778). As recognized by the ALJ, these mental health records are consistent with M.C.K.'s school records which reflect M.C.K. has no problems interacting and relating with others and "[h]e also seems to enjoy interacting with peers during class activities and in social settings." (Doc. 14; PageID. 707).

In review of the ALJ's decision, the Court must determine whether the ALJ's findings are supported by substantial evidence – not whether he explicitly mentioned every piece of evidence in his opinion. Here, the ALJ's decision cites to and discusses the AltaPointe mental health records to a degree demonstrative of consideration of the source. *See* 20 C.F.R. § 1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); *see e.g., Poole v. Kijakazi,* 2022 WL 1651196, at *2 (M.D. Ala. May 24, 2022) (in considering whether a medical source's opinion is supported by the source's own records and consistent with the other evidence of record, "an ALJ need only explain the consideration of the factors on a source-by-source basis; the regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source"). "An ALJ 'is under no obligation to "bridge" every piece of evidence he finds inconsistent with a specific opinion. [ ] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject

evidence in a way that prevents meaningful judicial review.'" *Poole,* 2022 WL 1651196, at *3 (quoting *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021)). Here, the ALJ complied with the applicable regulations. *See Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (holding that ALJ is not required to discuss every piece of evidence as long as the reviewing court can surmise that the ALJ considered the plaintiff's medical condition as a whole).

## **CONCLUSION**

To be sure, the evidence in the record in some respects is contradictory, which is not surprising given the evidence includes various people's perceptions of M.C.K., a thirteen-year-old, in different settings. However, a review of the ALJ's decision reveals that he thoughtfully considered all of the evidence and, based upon the totality of the evidence and his credibility determinations, reached the conclusion that M.C.K. was not disabled under the Act. Plaintiff here is essentially requesting that this Court reweigh the evidence and substitute its judgment for that of the Commissioner. It is well-established that the Court cannot take such action. *Chester*, 792 F.2d at 131. When "substantial evidence supporting the ALJ's fact findings exists, we cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings." *Bryant,* 478 F. App'x at 645.

This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that M.C.K. is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED**

that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **9th** day of **June, 2023**.

           s/P. BRADLEY MURRAY
           **UNITED STATES MAGISTRATE JUDGE**